ALBANY,
Dec. 1823.

Clark
v.
Henry.

GARDNER CLARK, impleaded with FREDERICK DAVIS, appellant.

*against*

WILLIAM HENRY, respondent.

A conveyance of property absolute in terms, if intended by the parties to be a security for a debt, is a mortgage:

And this, whether the intention is manifested by a written defeasance, executed simultaneously with the conveyance, or by the parol declarations or the acts of the parties.

H. was indebted to C. on promissory notes of $225, and executed an assignment to C. absolute in its terms, of a mortgage which H. held against one D. for $1065 03 ; and C. and H. at the same time destroyed the notes: and C. executed to H. a writing, by which he promised to sell the mortgage to H. if he would pay C. $225 by a certain day ; and H. failed in the payment; and C. declared several times before the day of payment, that he held the assignment as security for his debt ; *Held*, that the assignment was a mortgage, and not a conditional sale ; and that H. might redeem on paying the debt due to C. with interest.

There is no exception to the rule, that a conveyance which is once a mortgage is always a mortgage.

No agreement in a mortgage, to change it into an absolute conveyance upon any event, will be allowed to prevail by a Court of Chancery.

APPEAL from the Court of Chancery. On the 8th February, 1819, Frederick Davis executed to the respondent, his promissory note and mortgage for $1065 03, with interest. In March, 1819, the respondent purchased of the appellant a span of horses, waggon, &c., for $285. Of this sum, 75 dollars were paid when due. The remainder was payable the 1st January, 1820 ; but was not paid at that time. On the 9th July, 1821, the respondent filed his bill in the Court of Chancery against the appellant and Davis, stating, among other things, that on or about the 16th February, 1820, the appellant demanded payment or security for the balance, amounting as he alleged, to $225 ; and offered an extension of credit to the 1st October following, if the respondent would give security ; that the respondent agreed to secure the payment at the time proposed, by pledging the mortgage ; and an assignment was drawn accordingly, which the res-

pondent supposed was by way of pledge, and which he sign-
ed by making his mark, and it was witnessed by one Hal-
stead, who also made his mark, neither the respondent nor wit-
ness being able to write or read writing, and no other per-
son being present; that the appellant, at the same time, ex-
ecuted a written agreement to the respondent, which the lat-
ter supposed was an agreement to re-deliver to him the mort-
gage, on his paying the balance; but which he afterwards
discovered contained no such agreement. The object of
the bill was to redeem, and for the re-assignment and fore-
closure of the original mortgage, &c.

The answer of the appellant, admitted that the assignment
was for the $225, but insisted that it was absolute, and was
so understood by the parties. The answer further admitted,
that after the assignment was executed, the appellant told
the respondent he would re-sell and re-assign the mortgage,
if the respondent would pay him the 225 dollars; and that
the appellant drew and signed a writing, by which he agreed
to sell the mortgage to the respondent for $225, if that sum
was paid by the first day of October, then next; that the
reason of the mortgage being sold at such a reduced price
was the respondent's apprehension, that he should lose the
money due upon it, by reason of a supposed failure of title
to the mortgaged premises; that he, for this reason, offered
to sell the mortgage to the appellant on the terms finally
agreed upon. The answer admitted the respondent to be in-
capable of writing, or reading writing; but denied that Hal-
stead was so.

Proofs were taken in the cause; and Halstead swore that
the assignment was made under an agreement, that if the
225 dollars were paid by the 1st October, the mortgage
should be re-delivered, and that the appellant declared, at
the time, that he took the assignment merely as security for
that sum, and gave a writing to the effect, that if the money
should be paid by the first October, then the mortgage should
be re-assigned; but if the money should not be then paid,
the appellant should hold the mortgage.

In February, 1820, the appellant declared to one Barker,
that he held the mortgage as security for money due from

the respondent, and if it was not paid by the next fall, he should hold the mortgage. · He repeated the same declaration to Barker, at a subsequent day, before the money was due, and after it became due he told the respondent, in the presence of Barker, that the day had been when he (the respondent) might have saved himself, but he had not stirred; that it was then too late, and he (the appellant) meant to cut and sear.

On the part of the appellant, the proof was, that the respondent declared to one Eldridge, that he had sold the mortgage to the appellant, and did not care whether he ever got any thing upon it or not, and gave as a reason for selling it, at a reduced price, that he apprehended losing it on account of a reported failure of title to the mortgaged premises. He made a similar declaration to one Barker, adding that if he paid the appellant, the latter was to sell him the mortgage back again. He also declared to one Colton that he had sold the mortgage to the appellant, and had been paid to his full satisfaction. He made a similar declaration to one Van Auker.

The 225 dollars, due from the respondent to the appellant, were secured by the promissory notes of the former, which were destroyed at the time of assigning the mortgage. In February, 1821, the respondent tendered to the appellant the debt due to him, and in April following, he forbade Davis' paying the money due on the mortgage, to the appellant; notwithstanding which, on the 28th May thereafter, Davis' obtained the appellant's release of the mortgage, on paying a part and substituting other security for the residue.

The Chancellor decreed, that the assignment was by way of mortgage—that the defendants below, or one of them, should pay the balance due on the original mortgage, with the costs of the suit, and that the mortgaged premises should be held chargeable, &c.

The reasons of the (late) Chancellor, for this decree, were thus assigned:

It is clearly established by the answer and the proofs, that the bond and mortgage were assigned by the plaintiff to the

defendant Clark, by way of mortgage, to secure the payment of $225 by a given day, and any agreement that the assignment was to be an absolute sale, without redemption, upon default of payment on the day, was unconscientious, oppressive, illegal and void. The equity of redemption still existed in the plaintiff, notwithstanding any such agreement.

There is no principle in Equity better settled, than that every contract for the security of a debt, by the conveyance of real estate, is a mortgage ; and all agreements of the parties, tending to alter in any subsequent event the original nature of the mortgage and prevent the equity of redemption, are void. If the conveyance or assignment was a mortgage in the beginning, the right of redemption is an inseparable incident, and cannot be restrained or clogged by agreement. Though the conveyance be absolute in terms, yet if the intention appear, to make the estate redeemable, it will continue so until foreclosure ; for the maxim of Equity is, that the estate cannot be a mortgage at one time and an absolute purchase at another. This is an elementary rule on this subject, and the object of it is to prevent imposition and fraud on the mortgagor.

The original design of the assignment in this case, being admitted to be by way of pledge or mortgage for a debt, and this design being contained in a collateral instrument executed concurrently, by the defendant Clark, it seems to put an end to all question as to the right of redemption. And upon a tender of the 225 dollars with interest, in February, 1821, the plaintiff was entitled to a re-assignment of the bond and mortgage; and any payment and discharge of the mortgage, afterwards, by negotiation between the two defendants, was fraudulent and void as respected the plaintiff. It is satisfactorily shown, that the defendant Davis had notice of the plaintiff's claim upon the bond and mortgage, prior to the negotiation and settlement, between him and the defendant Clark, and the same was made at his peril and in his own wrong. It was, according to my judgment of the facts, a fraudulent combination, between the two defendants, to deprive the plaintiff of his rights.

The plaintiff has been treated by the defendant Clark, with great injustice, and it is incredible that he should have agreed to sell absolutely, a bond and mortgage, well secured, (for nothing appears to gainsay this presumption,) for upwards of 1000 dollars, for the grossly inadequate sum of 225 dollars. The right of redemption rests in this case upon the most obvious principles of Equity. It is just and proper that Clark should pay the balance due to the plaintiff, since he has appropriated the bond and mortgage to his own use and discharged the same, after receiving payment of part and taking new security on new terms for the residue.

*S. M. Hopkins*, for the appellant, made the following points :

1. The distinct ground of the bill is *fraud and imposition* in the terms of the writings ; the contracts being fraudulently stated to an unlettered man. But this ground is abandoned when the interrogatories are drawn up, and is not at all supported by the testimony, nor relied upon in the decree.

2. All the testimony of the complainant below goes only to alter a written contract, by parol, or to set up a contract by parol, against the terms of a written contract.

3. The decree goes upon the ground, neither of the fraud alleged in the bill, nor the parol matter shown in evidence against the writing—but upon the ground that the papers, as they stand, constitute a mortgage—whereas upon the case as proven, it is not a mortgage, but a conditional sale.

4. All the allegations, of fraud in the appellant, are completely disproved.

5. This was the case of a contract of hazard, and is no more to be altered by the event of the risk in question, than a chance in a lottery or an insurance.

6. The respondent had no claim upon Davis for payment, without offering him an indemnity.

In support of the 3d point he relied upon the fact, that at the time of the assignment the promissory notes, given by the respondent for the debt, were surrendered and destroyed. He said the original debt was gone. There cannot be a mortgage unless to secure a debt ; but Henry was left under no obligation to pay. Had the assignment proved unavailing, or the mort-

gage from Davis unproductive, the appellant would have been without remedy. A personal obligation to pay is of the essence of a mortgage. The transaction between these parties was a mere accord and satisfaction for the debt. Where the grantee of lands subject to a limited power of redemption, has not all the remedies of a mortgagee, the conveyance is not a mortgage but a limited sale. Therefore, where lands were conveyed in lieu and satisfaction of a portion charged on them, with a clause of redemption if the portion were paid in ten years, there being no covenant for the payment of the portion, nor any collateral security, a redemption was refused after ten years ; for, if the produce of a sale of the lands were insufficient to discharge the portion, the grantee could have no remedy against the grantor, to recover the deficiency.(*a*) The fair criterion, in Equity, to determine whether a deed be a mortgage or not, is, are the remedies mutual and reciprocal ?(*b*) Has the grantee all the remedies that a mortgagee is entitled to ? This is like a lottery or insurance transaction. A discount is allowed by way of premium, and the assignment is without recourse.

*S. A. Foot*, for the respondent, stated the following points :

1. The Court of Chancery will always relieve against a forfeiture, or loss, resulting from the non-payment of money on the day, if compensation can be made ; and interest of the money is always held to be an adequate compensation.(*c*)

2. An absolute conveyance of real or personal property, with an agreement to re-convey in case a sum of money is paid by a certain day, is a mortgage.(*d*)

3. Every conveyance of real and personal property, made with a view to secure a debt, is a mortgage—and it will be so regarded in Equity if the object of the conveyance is made out by parol or written evidence. The facts in this case show, that the object of the assignment of the note and mortgage, was to secure the $225 due to Clark.(*e*)

4. Any agreement made at the time, or subsequent to the giving of a mortgage without any new consideration, tending to embarrass or defeat the right of redemption after

ALBANY,
Dec. 1823.

Clark
v.
Henry

(*a*) *Goodman v. Grierson*, 2 Ball & Beatty, 274.
(*b*) *Id.* 279.
(*c*) *Wallis* v. *Crimes*, 1 Ch. Cas. 89. 1 Eq. Cas. Abr. 113, S. C. *Cage* v. *Russel*, 2 Ventr. 352. 1 Mad. Ch. 27, 8, and the cases there cited. *Skinner* v. *Dayton*, 2 John. Ch. Rep. 535, per Kent, Ch. *Skinner* v. *Dayton*, 17 John. Rep. 365, per Spencer, C. J. id. 369, per Yates, J. *Manlove* v. *Ball*, 2 Vern. 84.
(*d*) *Dey* v. *Dunham*, 2 John. Ch. Rep. 189. *Peterson* v. *Clark*, 15 John. 205. *Dunham* v. *Dey*, id. 255. *Manlove* v. *Ball & Bruton*, 2 Vern. 84. 1 Eq. Cas. Abr. 313, S. C.
(*e*) 1 Pow. on Mort. 156 to 154. 1 Mad. Ch. 414 to 418, and the cases cited by these authorities respectively.

Clark
v.
Henry.

(*f*) Id.

forfeiture of the mortgage, is held in Equity to be illegal, oppressive and void.(*f*)

5. The conduct of Clarke merits the adjudication of costs against him.

He remarked, that in *Dunham* v. *Dey*, the defeasance was executed more than a year after the deed, yet holden a mortgage.

(*g*) Vid. *Gillespy* v. *Moon*, 2 John. Ch. Rep. 590, and the cases there cited by Riggs & Mitchell, arg.

*Hopkins*, in reply said, no attempt is made to answer the appellant's point grounded on the statute of frauds. A sealed instrument cannot thus be defeated by parol.(*g*) Nor has the objection, that an agreement in restraint of the right to redeem is void, any application to this case. Here never was any right to redeem. The assignment was absolute from the nature of the transaction. The debt was destroyed at the moment of its execution and all collateral remedy gone. Suppose the mortgage had turned out to be not worth five straws—we never could have recovered the balance, of Henry. It was a mere conditional sale, within the case from Ball & Beatty, and the condition precedent not being performed, we are under no obligation to re-convey.

Bill.

Answer.

WOODWORTH, J. The bill states that at the time the assignment was made, the appellant declared it was by way of pledge, and that the instrument in writing delivered to the respondent was an agreement to re-deliver the mortgage on payment of $225. In the answer, the appellant alleges, it was an absolute sale and transfer, but he admits that he agreed to re-sell and re-assign, if the respondent paid $225, on or before the first of October, then next ; that he wrote and signed an instrument to that effect.

Halsted's
evidence.

William Halstead, a subscribing witness, testifies, that Clark gave Henry a writing, which specified, that if Henry paid the money by the first of October, he was to re-assign ; if not, Clark was to hold the mortgage. This does not vary materially from the writing stated in the answer. There is no magic in the words " *agreeing to sell the mortgage*," to distinguish the case from an agreement to re-assign. Halsted is not contradicted as to the fact, that the assignment was received as a security.

There is proof that, afterwards, the respondent admitted it was a sale, and the appellant admitted it was a security.

Without reference to the construction which the law would put on the transaction, I am satisfied, that, at the time, neither party considered the assignment an absolute sale. If it was not, the respondent had a right to redeem and is not barred by non-payment at the day.

The case warrants the inference, that Clark supposed the papers were so drawn as to defeat the right of redemption, if there was a failure of payment, and that the word " sell" was inserted, instead of the more appropriate term *re-assign*, so as thereby to obtain a mortgage of $1065, for the inadequate consideration of $225.

The whole operation, seems to be devised for the purpose of overreaching an ignorant man who could neither read nor write.

There cannot, however, be any doubt, that the writing executed by the appellant was *per se* a defeasance merely. On what terms was the appellant to sell ? Not for the value of the security, but the amount of the original debt not equal to one-fourth of the mortgage. This speaks a language not to be mistaken. The instrument must be constructed as a covenant to re-assign.

The right to redeem is carefully protected by Courts of Equity. They will not suffer an agreement to prevail, that the estate shall become an absolute purchase in the mortgagee, upon any event whatever. The reason of the rule is, because it puts the borrower too much in the power of the lender, who being distressed at the time is generally too much inclined to submit to any terms. There is no exception to the rule, " once a mortgage, and always a mortgage." (1 Mad. 413.) No agreement of the parties can affect the doctrine as to redemption in a Court of Equity. In *Seton* v. *Slade*, (7 Ves. Jun. 273,) Ld. Eldon observes, " you shall not by special terms, alter what this Court says are the special terms of that contract." I refer to the following cases which fully support these principles. 2 Cha. Ca. 58, 159, 147. *Toomes* v. *Conset*, 3 Atk. 261 : 1 Vern. 8, 33. *Floyer* v. *Livingston*, 1 P. Wms. 268.

Clark
v.
Henry.

Notice to
Davis.

The respondent in April, 1821, gave notice to Davis that he should look to him, and forbade his making payment to Clark. In May following, Davis made a settlement with Clark, and accepted a discharge. He appears to have been fully apprised of the circumstances, and took upon himself the risk of being answerable to the respondent. He cannot justly complain, in being made liable for the balance that may remain due after execution against the appellant shall have been executed and exhausted.

I am of opinion, that the decree of his Honor, the Chancellor, be affirmed.

SUTHERLAND, J. concurred.

SAVAGE, Ch. J. (after stating the facts.) I concur fully in the opinion given by his Honor, the Chancellor. The assignment was intended merely as a security, and not as an absolute sale. Such was the understanding of the witness, Halstead, and such is the reasonable construction upon the acts of the parties.

Absolute deed, with written or parol defeasance, is a mortgage.

That a deed, absolute on its face, but accompanied by an agreement, in writing or by parol, operating as a defeasance, is a mere mortgage, is perfectly well settled. (*Dey* v. *Dunham*, 2 John. Ch. Rep. 189. *Paterson* v. *Clark*, 15 John. Rep. 205.)

The character of the transaction between the parties being established, the rights of mortgagor and mortgagee are easily ascertained.

No agreement allowed to change mortgage into an absolute deed.

It is a well settled principle, that Chancery will not suffer any agreement in a mortgage to prevail, which shall change it into an absolute conveyance upon any condition or event whatever. (*Howard* v. *Harris*, 1 Vern. 190. *James* v. *Oades*, 2 id. 402.)

Once a mortgage always a mortgage.

"Once a mortgage, always a mortgage." In *Newcomb* v. *Bonhan*, (1 Vern. 7,) where an absolute conveyance was given, with a defeasance upon payment of £1000, during the life of the grantor, and the grantor covenanted, that it should never be redeemed after his death ; yet redemption was decreed.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

The respondent was, in this case, clearly entitled to redeem; and the decree of the Chancellor should be affirmed.

This being the unanimous opinion of the Court, it was thereupon ORDERED, ADJUDGED AND DECREED, that the decree of his Honor, the Chancellor, made in this cause, be in all things affirmed; and that the appellant pay to the respondent his costs in this Court, to be taxed; and that the record and proceedings, &c., be remitted, &c.