## GRISWOLD a. FOWLER.

*Supreme Court, Second District; General Term, Dec.,* 1857.

FORECLOSURE.—PARTIES.—WHEN DEED ABSOLUTE IN TERMS MAY · BE PROVED TO BE A MORTGAGE.

The mortgagor conveyed the equity of redemption to a third party by a deed absolute in its terms, and containing a covenant on the part of the grantee that he would assume and pay the mortgage; six months afterwards he made a general assignment for the benefit of creditors; seven months after the first conveyance he executed and delivered to the grantee in that conveyance an instrument releasing him from his assumption of the mortgage, which release was then recorded; and a few days afterwards a foreclosure action was commenced on the mortgage. The grantee was made a party to this action, but the assignee for benefit of creditors was not. Eighteen months subsequently, and after judgment, and postponement of sale by consent, and shortly before actual sale, the grantee executed and delivered to the mortgagor an instrument declaring the deed to have been, although absolute in terms, intended merely as security for the payment of a debt due from the mortgagor to the grantee, and covenanting to hold the premises only as such security, and upon payment to reconvey.

*Held,* that the deed could not be considered as a mortgage, the delay and the nature of the evidence marking it with suspicion; and that therefore the assignee was not a necessary party to the foreclosure action, and the proceedings were not irregular because the plaintiffs had refused to join him.

*It seems,* that if the deed had been properly proved to have been defeasible, the assignee would have been a necessary party, although the assignment was not recorded till after the commencement of the foreclosure action. The case of Hall *v.* Nelson (23 *Barb.,* 98), as to this point, approved.

Appeal from an order of the special term, requiring the purchaser of mortgaged premises at a foreclosure sale to complete his purchase.

In May, 1853, the defendant Fowler gave to the plaintiffs a mortgage for $52,890, on a tract of land, containing upwards of

thirty-five acres, situate in Richmond county. He afterwards sold small portions of the land to different individuals. On January 6, 1855, he conveyed the whole of the residue of the premises to Joseph T. Crowell, by a deed absolute in form, describing them as subject to the plaintiffs' mortgage; and Crowell, by the terms of the deed, assumed the mortgage, and undertook to pay it. Very shortly after its date, this conveyance was recorded as a deed in the office of the clerk of Richmond county. On June 18, 1855, Fowler executed and delivered to H. W. Robinson a general assignment of all his estate, real and personal, for the benefit of his creditors. On July 21, 1855, Fowler executed and delivered to Crowell an instrument releasing him from his assumption of the mortgage, which release was duly recorded on July 27, 1855.

The present action was commenced on August 3, 1855, by the plaintiffs, the mortgagees, for the purpose of foreclosing the mortgage. Fowler was made a defendant, as the obligor, and Crowell and his wife as the owners of the land. And all other persons were joined as defendants, who appeared from the records of the county to have any interest in, or incumbrance on the lands. The usual judgment of foreclosure and sale was obtained on December 31, 1855, and the property was soon afterwards advertised for sale. The sale was, however, postponed, and did not take place till April 14, 1857, when John R. Tatem became the purchaser of the premises for $63,700. He paid down ten per cent. of the purchase money, but subsequently refused to complete his purchase; and the plaintiffs moved at special term to compel him so to do.

In opposition to the motion, there was read a copy of an instrument executed by Crowell to Fowler, dated February 16, 1857, acknowledged March 7, 1857, and on the same day recorded as a deed in the office of the clerk of Richmond county. This instrument refers to the deed from Fowler to Crowell, by its date and place of record, and recites that "said deed, although absolute in its terms, was intended merely as a security to the said Joseph T. Crowell, for the payment to him by the said Isaac V. Fowler of the sum of $7000, in which said Fowler was and is indebted to him." Crowell then covenants and agrees with Fowler, his heirs and assigns, and also with Robinson, the assignee of Fowler, " that he has held, and does hold,

debt? For one, before such an interest should be allowed to defeat such a suit as this, and under such circumstances, I think the parties should be held to some strictness of proof. They ought to make out at least a *prima facie* case; such that, if unanswered and unexplained, a jury would, when it should be presented to them, upon a trial, be bound to find in favor of the claimant. It is not fit that parties, whose rights have been barred for months or years by a judgment of foreclosure, should be allowed to reinstate their claims, by such loose, inconclusive statements of what may perfectly well be *ex post facto* agreements, concocted for the very purpose of evading the decree.

There is no case in the books of this State where, on such proofs as are here presented, an absolute deed has been held to be a mortgage. But, in all the cases, the agreement constituting the defeasance has been shown to have been contemporaneous with and a part of the conveyance. (See 15 *Johns.*, 205; 18 *Id.*, 169; 8 *Wend.*, 641; 9 *Id.*, 227; 14 *Id.*, 63; 21 *Id.*, 36; 2 *Johns. Ch. R.*, 189; 4 *Id.*, 167; 2 *Cow.*, 324; 1 *Paige*, 202–208; 5 *Id.*, 9; 4 *Seld.*, 416.)

The only case in which such evidence has been admitted is that of Webb *v.* Rice (1 *Hill*, 606), which was reversed on Error (6 *Ib.*, 219). It is proper to say, however, that the character of the evidence admitted at the trial was not adverted to in the Court of Errors. Nor, indeed, could it have been. For the decision went upon the ground that no parol evidence was admissible in a court of law to show that a deed absolute on its face was intended as a mortgage.

These considerations seemed to me, at the special term, as they still seem, a sufficient reason for overruling the objection to the title, and granting the plaintiffs' motion. In this view my brethren concur. And upon this ground we are all of opinion that the order appealed from must be affirmed.

But such an order, founded only on that ground, would not have finally disposed of the real difference between these parties. If further evidence existed, and the omission to adduce it on the previous motion had arisen from inability to obtain it, or from surprise or excusable inadvertence, the purchaser might, on the proper affidavits, have obtained leave to renew his motion. It was, therefore, proper to examine the question at special term, on the supposition that the purchaser has established the

*L. K. Miller*, for plaintiffs, respondents.

*J. Van Buren*, for the purchaser, the appellant.

By the Court.*—Birdseye, J.—When this case was before me at the special term, I thought that, admitting the legal positions contended for by the purchaser to be sound, he had failed to establish the main fact on which he relied, viz. : that the deed from Fowler to Crowell was, at the time of its execution and delivery, understood and agreed to be, not an absolute conveyance, but a mere security for the payment of money, and intended to operate as a mortgage. A careful reconsideration of the evidence has confirmed that opinion. Upon the whole case, I am satisfied that the objection set up to this title is the result of a scheme devised long after the judgment of foreclosure, and for the purpose of rendering it ineffectual.

Fowler, who must have been the best witness to the necessary facts, if they existed, is silent as to the transaction. Crowell, who does speak, says but little, and what he says is as remarkable as what he omits to say. There is an utter indefiniteness as to the time when the alleged intention, that this deed should be merely a security, was formed, or between whom it existed, or in what manner it was to operate as such security. He merely says, reading his affidavit, and his certificate or covenant together, that the deed was intended merely as a security for the payment of a debt. He does not say that such an intention existed at the time of the execution and delivery of the deed; that it was agreed to by both the grantor and grantee, and formed a part of the transaction of making and receiving the conveyance. Unless such was the fact, no one will pretend that the deed can be made any thing but what it purports to be, an absolute conveyance. And yet, could Crowell be punished for a perjury in stating what he has done on this motion, if it should hereafter appear that the intention he speaks of was formed subsequent to the delivery of the deed, or at any rate that it was not then expressed as constituting any portion of the agreement of the parties, and did not enter into the transaction, as it took place?

Nor is it stated how this deed was to operate as a security.

---

* Present, Harris, Birdseye, and Emott, JJ.

If the agreement at the delivery of the deed, though presently formed, was merely that the grantee would reconvey the lands, if paid a certain sum of money, previously due to him as a debt from the grantor, it would not convert the absolute conveyance into a mortgage. The grantor would, in such a case, have to rely on the personal agreement of his grantee. If performance could not be obtained, he must take instead damages for the non-performance. All the features of this case warrant the belief that, for one or both of these reasons, the deed did transfer to Crowell the title to the lands described, so that they were duly foreclosed in his hands by the judgment in this action. The deed was absolute in its terms : it bound Crowell to assume and pay the prior mortgage of the plaintiffs, which then amounted to nearly $60,000. A most singular way of securing a debt of $7000, to become liable for another of more than $50,000. It was recorded as a deed. Fowler subsequently assigned all his property for the payment of his debts. But neither he nor his assignee then, or for many months thereafter, supposed that he possessed, or had conveyed to the latter, any interest in these lands. More than a month after the conveyance, and just before the commencement of this suit, Fowler gave to Crowell a release from his assumption of the plaintiffs' mortgage. This release seems to have been designed to relieve Crowell from his liability for the large mortgage debt in the action just about to be brought. In July, 1856, more than six months after the recovery of the judgment herein, more than a year after the assignment, and more than eighteen months after the deed to Crowell, Fowler procured a postponement of the sale of the mortgaged premises. He then gave a stipulation, in his own name (he being an attorney of this court), but signed it, " for self and J. T. Crowell and wife." The terms of this paper are significant. It recites that the plaintiffs had (and obviously at the request of Fowler and Crowell) agreed to postpone the sale to the 15th of August then next. In consideration of such postponement, it is then stipulated that, in case the action is not settled by the 15th of August next, " the sale shall proceed at that or any other time, and in such manner and in such form, as to the whole or any part thereof, *as the plaintiffs may elect, without interference on our part*, provided only that the lands conveyed before the commencement of this action, the deeds of

which are recorded, shall be last sold, as directed in the decree."
This last clause clearly refers to conveyances made by Fowler,
of lots or subdivisions of the mortgaged premises, to different
persons who had equities entitling them to have their lots re-
leased from the mortgage, if the sale of the *residuum* of the
property mortgaged would satisfy the plaintiffs' debt.   But it is
apparent that Fowler, in thus stipulating for Crowell, acted for
him as the owner of the lands.   He treated himself as the party
liable for the mortgage debt, and Crowell as the party who had
that interest in the lands which was to be most affected by giv-
ing up the right to have them sold in lots.   There is no allusion
to Fowler's assignee, or any interest on his part in the premises.
I think this stipulation could not have been given, if, up to that
time, Fowler had ever entertained the idea that his deed to
Crowell was merely a security and defeasible, so that the fee of
the land remained in him and passed to his assignee.

It is obvious, moreover, that Fowler, when he gave this deed
to Crowell, was insolvent, and the demands then existing against
him were rapidly ripening into judgments.   That fact affords
abundant reason for desiring to have the title to these lands held
absolutely by a third person, though with whatever secret
understanding as to a reconveyance the parties may have chosen
to make.   Now, if to all these circumstances be added the fact,
that this supposed claim of the assignee slept for a year and a
half after the assignment, and a year after the judgment in this
action, and until other expedients for preventing a sale had been
exhausted, I can see no room for doubt, that the cautious reticent
style of Crowell's affidavit was deliberately adopted, for the
reason that truth would not permit the making of broader alle-
gations.   For there is nothing in all these papers which shows
affirmatively that either Crowell, or Fowler, or Robinson the
assignee, ever dreamed, until about the time of recording the
assignment in February, 1857, of the existence of such an inte-
rest in the latter as is now set up.   Nor can I help remarking
that the form of the covenants in Crowell's agreement of Febru-
ary 16, 1857, with Fowler, tends to the same conclusion.   For
why was it not sufficient to have declared that the original
agreement of defeasance existed and formed part of the convey-
ance ?   Why add the express covenants to hold the lands only
by way of security, and to reconvey them on payment of the

the said title to said premises only by way of security as aforesaid; that the said deed and the title conveyed to him shall be held only by way of security for the repayment of the amount so as aforesaid due to him from the said Fowler; and that upon the repayment of said amount he will release or reconvey the said premises, and all his title and interest therein, with a covenant against his own acts, to the said Fowler, or his assignee legally entitled to such reconveyance."

An affidavit of Crowell's was read, in which he states, after referring to this instrument, " that the recitals and allegations therein contained are true."

An affidavit of Robinson's was also read, in which he stated the assignment to him; that some time after the delivery of the assignment to him, but how soon he could not state, he was informed that this action had been commenced, and from some source derived the information, which he has since ascertained to have been incorrect, that the action had been commenced prior to the delivery of the assignment to him; that he was not informed till a considerable time afterwards, but how long he could not state, that the deed from Fowler to Crowell was not intended as an absolute conveyance, but merely by way of mortgage; and that these circumstances were the occasion of his delay in putting the assignment on record in Richmond county. The assignment was recorded in that county on January 26, 1857. From about that period the assignee seems to have claimed an interest in the mortgaged premises. He informed the plaintiffs' attorney of the interest which he thus claimed, and requested to be made a party to the action, which was refused.

Notice of the same claim was duly and publicly given at the time of the sale; and the principal objection to the motion, both at the special and general term, was that the deed to Crowell was in fact a mortgage, though absolute in form; that Fowler was therefore the owner of the fee of the land at the time of his assignment to Robinson, and that Robinson was, by consequence, a necessary party to this action, so that the failure to join him as a party rendered defective the title attempted to be conveyed upon the sale.

The motion was granted at special term, and the purchaser ordered to complete the purchase. From this order he appealed.

existence of an agreement, contemporaneous with the deed, that it should operate as a mortgage.

I shall proceed to express my views of the case in this aspect of it; for I deem this point fairly presented. But my brethren have not thought it necessary for them to examine this latter point; the objections to the motion having failed for want of a foundation in fact. It must, therefore, be understood that for the residue of this opinion my brethren are not responsible.

In my previous examination of this case I was strongly inclined to agree with Mr. Justice Strong, in the opinion expressed by him in Hall v. Nelson (23 *Barb.*, 99), as to the necessity of joining, as a defendant in a suit to foreclose a mortgage, the party who held an unrecorded conveyance of the premises.

I thought then, as I think still, that the determination of that point was unnecessary to the decision of that case. A majority of the court having come to the conclusion that the county court had no jurisdiction whatever of the action, the regularity of the proceedings was immaterial. Whether they were right or wrong in point of form, could be of no moment, if the county court had no power to conduct any proceedings whatever in the action.

But upon a more attentive examination of the reasoning of Mr. Justice Emott, I am compelled to admit its accuracy and force. By the terms of the statute (*Code*, § 132), the notice of the pendency of the action is, from the time of its filing only, constructive notice to a purchaser or incumbrancer of the property affected thereby. The natural meaning of these words makes them apply to one who becomes a purchaser or incumbrancer subsequent to the filing of the notice. I think that neither the terms of this statute, nor those of the recording act, nor the decisions of courts of equity in regard to the effect of the notice of *lis pendens*, warrant the extension of the provision, so as to make the filing of the notice constructive notice to those who have previously purchased, but have omitted to record their conveyance. The recording of the previous conveyance is not a purchase. The prudent purchaser of landed property would make search for incumbrances at the time of taking his conveyance rather than at the time of putting it on record.

I think, too, that the opinion of Mr. Justice Strong, on this point, is open to criticism to an extent very unusual with that

acute and learned judge. Upon a careful examination, does he not assume the point to be proved, in saying that when the holder of a mortgage of real estate institutes proceedings in equity to foreclose it, he is bound to include, as defendants, all who *are known to him*, by a knowledge either actual or presumptive, to have a title to, or lien upon the equity of redemption? Upon what principle is the duty of joining parties as defendants limited by the *knowledge* of the plaintiff, either actual or constructive of their rights, instead of extending to all who have in fact the right to redeem, whether that fact be known to the plaintiff or not?

Again, is there not a slight want of precision, when, in speaking of this obligation to join the parties in interest as defendants, it is called a *right*, and said to be, a *right* which cannot be affected by an unrecorded conveyance, of which the mortgagee has no actual notice? The inconveniences which may result from holding that the unregistered owner is a necessary party to the foreclosure suit, will no doubt be very considerable. In case parties choose to take advantage of the Rule, they may, in fact, render a foreclosure almost nugatory. But where the sense of the statute is plain, the court cannot change its meaning by reason of obstructions and difficulties, however serious, to result from following it.

The legislature, in such a case, must interpose to remove the inconveniences to which their act has given rise. It will be enough for the court to remove those which result from the acts of the court.

I think, therefore, that if Robinson, the assignee, had any subsisting interest in the premises mortgaged, when the action was commenced, he was a necessary party, although his interest was not in fact known to the plaintiff or his attorney, and could not be ascertained from any search, however diligent, in the records of the county clerk's office. Had Robinson, then, any such interest?

The purchaser claims the right to show that he had, by parol proof. But he does not offer to show, that by any accident, or fraud, or mistake, a conveyance, which was intended to be merely a security for money, has in fact been made absolute in its terms.

It is upon these grounds only, that the text-books put the

right to introduce parol proof of the defeasible character of a conveyance of lands (2 *Story's Eq. Jur.*, § 1018; 4 *Kent's Com.*, 142–143; 2 *Fonblanque's Eq.*, b. 3, ch. 1, § 5, *note h*).

The same reason is given for many of the decisions in this State. (See Strong *v.* Stewart, 4 *Johns. Ch. R.*, 167; 1 *Id.*, 429; *Hopk.*, 124; 12 *Wend.*, 61; 14 *Id.*, 67; 21 *Id.*, 38, 39; 6 *Hill*, 219.)

In the leading case of Clark *v.* Henry (2 *Cow.*, 324), both the chancellor (p. 327), and Mr. Justice Sutherland (p. 331), give the fraud apparent in that case as among the reasons for their decisions.

It is, perhaps, now too late to attempt to introduce exceptions to the rule, which seems to have been extended so far beyond the reason, as almost to have become general, that parol evidence is admissible to prove that a deed absolute in its terms is in fact a mortgage, without reference to fraud, accident, or mistake. In reference to all such cases as Champlin *v.* Butler (18 *Johns.*, 169), where the transfer was not of lands but of chattels, or such cases as Clark *v.* Henry (2 *Cow.*, 324), where there was an agreement in writing, but not sufficiently full to form a complete defeasance, the only objection to the admission of the parol proof is, that rule of evidence which excludes oral proof to contradict written instruments,—a rule adopted by the courts, and to a certain extent subject to their control.

But when, as here, the attempt is to divest, by parol proof, the title to land from the grantee, and re-vest it again in the grantor, or to create or declare a trust, concerning the lands, in the grantor, the statute (2 *Rev. Stats.*, 134, § 6) is, in my humble judgment, repealed. There is no deed or conveyance in writing. There is no act or operation of law, in any sense, of which I can conceive. Though there may be said to be, if direct fraud is imputed, or if a design to take a fraudulent advantage of an accident or mistake is charged. I am therefore constrained, though with reluctance, and much distrust, when my own judgment is set against so many apparent authorities, to declare that the parol proof here offered is inadmissible to show that the deed from Fowler to Crowell was defeasible, that the title passed to Robinson under the assignment, and that he is a necessary party to this action.

Such proof would be competent, I admit, if Crowell had

attempted to defraud Fowler, by converting an estate, which they had mutually agreed should be upon condition and subject to redemption, into one absolute. But nothing of that kind is pretended. And if the estate is lost to the grantor by this fore-closure, it is owing to his own acts, in placing the apparent legal title to it beyond the protection of any rule of the law. The court certainly cannot properly extend their powers to protect such an interest of the assignee, when for a year and a half after its creation, during the whole progress of this suit to judgment, and the efforts to enforce that judgment, neither Crowell, nor Fowler, nor Robinson was aware of the existence of such a right. as is now claimed.

The order appealed from should, on both these grounds, be affirmed with $10 costs.

## WETTER *a.* SCHLIEPER.

*New York Common Pleas ; Special Term, March,* 1858.

PARTNERSHIP ASSIGNMENT.—APPOINTMENT OF RECEIVER.

No power exists in any number of partners less than the whole to make a general assignment to a trustee for the benefit of creditors, *even* without prefer-ences.

Such an assignment, when made without the concurrence or consent of all the partners, is absolutely void.

*So held,* in an action brought by a non-concurring partner for a dissolution of an insolvent copartnership, and appointment of a receiver to close up its affairs.

Motion for appointment of a receiver.

In January, 1857, the plaintiff and the defendants Schlieper and Haarhaus formed a copartnership for the transaction of an importation and commission business, under the firm name of " Wetter, Schlieper & Haarhaus," to continue for three years. The place of business of the firm was at the city of New York, where the partners resided.

In May, 1857, the plaintiff went to Europe, temporarily,