LORENZ REICH, Plaintiff, *v.* ALEXANDER SMITH COCHRAN
and WILLIAM F. COCHRAN, JR., Individually and as
Executors and Trustees of and under the Last Will
and Testament of WILLIAM F. COCHRAN, Deceased,
et al., Defendants.

(Supreme Court, New York Special Term, February, 1914.)

Evidence — what may be shown by parol or other evidence — deeds.
Mortgages — assignment of lease and bill of sale absolute on their face
must be treated as mortgages — action to redeem where it appears
that defendants had deprived themselves of ability to restore the
property.

A deed absolute upon its face may be shown by parol or other
extrinsic evidence to have been intended only as a mortgage.

Where an assignment of a lease and a bill of sale though
absolute on their face are shown to have been given to secure
a debt of the party executing them, they must be treated as
mortgages with right of redemption upon payment of the debt.

Where in an action to redeem it appears that defendants by
their own acts had deprived themselves of ability to restore
the property to which plaintiffs might be entitled, they are
bound to account to the plaintiff for the proceeds of the sale
of the property, or its value, at the time when plaintiff's right
to a return of the property was established.

DEMURRER to complaint.

George E. Morgan, for plaintiff.

Percy H. Stewart (Samuel Untermyer and James
L. Bishop, of counsel), for defendants.

NEWBURGER, J. In order not to confuse this action with the numerous proceedings and actions between these parties, and which have been passed upon both at Special Term, Appellate Division and Court of Appeals, I am prompted to refer somewhat at length to the voluminous complaint herein, to which a demurrer has been interposed by the defendants Cochran. The complaint alleges that on the 24th day of February, 1886, the trustees under the will of William B. Astor, deceased, leased to the plaintiff the premises known as Nos. 328 to 334 Fifth avenue in this city, for the term of five years from May 1, 1886, and upon the performance of certain conditions by the plaintiff, for the further term of fifteen years after the expiration of said five-year term, at the yearly rental of $25,000, in quarter yearly payments, and the plaintiff was also to pay all assessments, taxes, water rates or rents imposed upon the demised premises. The lease also provided that the plaintiff should expend $50,000 by the 1st day of April, 1891, in making certain improvements upon said premises. It further provided that if at the expiration of said term of fifteen years, to wit, on the 1st day of May, 1906, there should be existing on said premises improvements of a specified character placed there by the plaintiff at a cost of not less than $50,000, then said trustees would, at their option, either pay to the plaintiff the value of such additions and improvements, not exceeding the sum of $100,000, or grant to the plaintiff a new lease for the term of twenty years, at an annual rental equal to five per cent. of the fee value of the premises; that the plaintiff entered into possession and made additions and improvements before the 1st day of April, 1891, at a cost of over $400,000; that prior to the 11th day of February, 1888, and while making the improvements upon said premises, plaintiff borrowed from the late

William F. Cochran the sum of $130,000, but that said Cochran claimed that he had advanced to plaintiff the sum of $275,000; that said Cochran threatened to institute legal proceedings against the plaintiff; that by reason of such threats and in fear, the said plaintiff did, on February 1, 1888, execute an assignment of said lease, a bill of sale of all the fixtures, furniture and other personal property used in the business of the Cambridge, and joined in a lease by said Cochran to the plaintiff of the said premises for the term of eighteen years and three months from February 1, 1888, at the following rent: $43,000 a year until May 1, 1891; $53,000 for each of the nine years thereafter; $55,500 for each of the two years thereafter, and $58,000 for each of the four years thereafter; the plaintiff also to pay taxes, assessments, water rents and other charges upon said premises; that in addition thereto the plaintiff and said Cochran made and signed another agreement whereby, after reciting the assignment and other instruments heretofore referred to, said Cochran agreed that if said plaintiff should keep and perform the conditions of said last-mentioned lease, said Cochran would, on the 1st day of May, 1900, reassign to the plaintiff said lease and bill of sale of the fixtures and furniture, upon receiving from the plaintiff the sum of $185,000, or, if plaintiff should elect, said Cochran would accept a bond and mortgage on the lease for $100,000, payable in installments, but plaintiff had the option to comply with said conditions until May 1, 1906, and he remained in possession and occupancy of said premises and property until Cochran took possession. The plaintiff then alleges that he did not read the papers or understand their meaning; that the trustees of the Astor estate having ascertained that the plaintiff had expended more than $50,000 in improvements, by an instrument in writing, duly extended said

lease for fifteen years to said Cochran and plaintiff; that said Cochran, without the consent of the plaintiff and against his protest, did, on or about the 17th day of March, 1893, enter upon and take possession of said premises and of the furniture and fixtures and other property, and collected the rents, income and profits thereof; that said Cochran died on or about the 27th day of December, 1901, and the defendants Cochran were appointed and duly qualified as executors and trustees; that said executors and trustees continued in possession of said premises, collected the rents and profits thereof, and on the 1st day of May, 1906, surrendered said premises to the trustees of the Astor estate, receiving and retaining the sum of $100,000 instead of accepting a renewal of said lease for the term of twenty years provided in the original lease; that the premises are situated in one of the most populous centers of the city and are very valuable; that the plaintiff paid to said Cochran certain sums of money which, with the moneys received by said Cochran from rents, income and profits not later than the latter part of the year 1893, discharged plaintiff's obligations to said Cochran; that the plaintiff is informed that the trustees of the will of William Astor, deceased, were ready and willing to grant a renewal of said lease for the term of twenty years, which said lease would have been of the value of over $500,000; that plaintiff is informed that the several assignments of said lease and property to Cochran constitute, in fact and equity, a mortgage, and that of all the papers between said Cochran and plaintiff the lease from Cochran was the only one recorded; that he has duly requested the defendants Cochran to account to him for said rents and profits. In the prayer for relief plaintiff asks that the several assignments and bills of sale be held to constitute a mortgage, and that an

accounting be had between the parties, and that plaintiff be allowed to redeem said mortgaged lease and property, or, as a substitute, that judgment be rendered against defendants Cochran for any amount due. The defendants Cochran and the trustees of the estate of Astor interposed separate demurrers, but since the argument I have received notice that the action had been discontinued as against the Astor estate and their demurrer withdrawn, so that I am now called upon to determine the question raised by the demurrer of defendants Cochran. The sole ground of the demurrer is that the complaint does not state facts sufficient to constitute a cause of action. Were the assignment of the lease and the bill of sale of the furniture from the plaintiff to Cochran absolute conveyances or given as collateral security for an indebtedness owing from plaintiff to Cochran? Exhibit E, annexed to the complaint, refers to the partnership heretofore existing between plaintiff and Cochran and its dissolution, and, after reciting the assignment of the lease and the transfer of the personal property to Cochran after a settlement of the accounts between the parties, provides that, upon certain payments being made at the election of the plaintiff, Cochran will reconvey the said lease and the personal property heretofore conveyed to him to the plaintiff. Exhibit F, also annexed to the complaint, is a lease from the Astor estate to Cochran and Reich for the term of fifteen years and the privilege of renewal for twenty years. After reciting the former lease and the expenditures by the plaintiff, it recites that the plaintiff, by virtue of agreements with Cochran, still retains a beneficial interest in the lease and into such rights of extension or renewal and into such additions and improvements or such compensation which may become or be payable or claimable for or in respect of the same. It further

provides that Cochran's rights to such lease and exten-
sions are subject to such rights of the plaintiff.   These
instruments show that the assignments and transfers
from the plaintiff were given to secure his indebted-
ness to Cochran, and although the assignment of the
lease and the bill of sale were absolute on their face,
they were mortgages by operation of law.   It is a well
settled rule in this state that a deed absolute upon its
face when given as security may, in equity, be shown
by parol or other extrinsic evidence to have been in-
tended as a mortgage.   *Horn* v. *Keteltas*, 46 N. Y. 609;
*Meehan* v. *Forrester*, 52 id. 277; *Macauley* v. *Smith*,
132 id. 531.   I am, therefore, of the opinion that both
the assignment, known as Exhibit B, annexed to the
complaint, and the bill of sale, known as Exhibit C,
must be treated as mortgages.   See *Mooney* v. *Byrne*,
163 N. Y. 92.   If the conveyances are to be treated as
mortgages, the right of redemption upon payment of
the loan necessarily follows.   As was said by Mr. Jus-
tice Vann in *Mooney* v. *Byrne, supra:*  '' The right
to redeem is an essential part of a mortgage, read in
by the law if not inserted by the parties.   Although
many attempts have been made, no form of covenant
has yet been devised that will cut off the right of a
mortgagor to redeem, even after the law day has long
passed by.   (*Clark* v. *Henry*, 2 Cow. 324, 331; Jones
on Mortgages, sec. 1039.)   Even an express stipula-
tion not to redeem does not prevent redemption, be-
cause the right is created by law.   For the same reason
an express power to sell at private sale after default
is of no effect.   ' If,' said Chancellor Kent, ' a free-
hold estate be held by way of mortgage for a debt then
it may be laid down as an invariable rule that the
creditor must first obtain a decree for a sale under a
bill of foreclosure.   There never was an instance in
which the creditor, holding land in pledge, was allowed

to sell at his own will and pleasure. It would open the door to the most shameful imposition and abuse.' (*Hart* v. *Ten Eyck*, 2 Johns. Ch. 62, 100.) The utmost effect claimed for the provision that the defeasance was not to be recorded is that it was a consent to a private sale after default. As was well said by a recent writer: ' If the instrument is in its essence a mortgage, the parties cannot by any stipulation, however express and positive, render it anything but a mortgage, or deprive it of the essential attributes belonging to a mortgage in equity. The debtor or mortgagor cannot, in the inception of the instrument, as a part of or collateral to its execution, in any manner deprive himself of his equitable right to come in after a default in paying the money at the stipulated time, and to pay the debt and interest, and thereby to redeem the land from the lien and incumbrance of the mortgage; the equitable right of redemption, after a default, is preserved, remains in full force, and will be protected and enforced by a court of equity, no matter what stipulations the parties may have made in the original transaction purporting to cut off this right.' (3 Pomeroy's Eq. Jur., sec. 1193.) So Mr. Thomas says that ' it was a bold but necessary decision of equity that a debtor could not, even by the most solemn engagements entered into at the time of the loan, preclude himself from his right to redeem.' (Thomas on Mortgages, sec. 9.) To prevent undue advantage through inadequacy of consideration, either with or without an opportunity to repurchase, the courts are steadfast in holding that a conveyance, whatever its form, if in fact given to secure a debt, is neither an absolute nor a conditional sale, but a mortgage, and that the grantor and grantee have merely the rights and are subject only to the obligations of mortgagor and mortgagee. (*Lawrence* v.

*Farmers L. & T. Co.,* 13 N. Y. 200.) '' It is claimed, however, that Cochran having surrendered the lease and accepted the sum of $100,000, plaintiff's remedy is an action at law and not in equity. Plaintiff was entitled to the lease and the chattels upon payment to the defendants Cochran of the amount due them. If the defendants by their own acts deprived themselves of the ability to restore the property to which plaintiff might be entitled they are bound to account to the plaintiff either for the proceeds of the sale of the property or its value at the time when plaintiff's right to such return was established. *Meehan* v. *Forrester,* 52 N. Y. 277; *Hart* v. *Ten Eyck,* 2 Johns. Ch. 117; *Clark* v. *Henry,* 2 Cow. 324. As this action is one to redeem as well as to require the defendants to account, the proper forum is a court of equity and not one of law. For the reasons stated the demurrer must be overruled, with leave to defendants to answer.

Demurrer overruled, with leave to defendants to answer.