In the Matter of ALBERT LADE, as Executor of FRANK P. NOLTA, Deceased, Petitioner, against LEON H. ABBOTT, as Commissioner of Public Welfare of Onondaga County, et al., Respondents.

Supreme Court, Special Term, Onondaga County, July 21, 1945.

*Jacob Benderson* for petitioner.

*P. Augustus Hopkins* for Leon H. Abbott, as Commissioner of Public Welfare of Onondaga County, respondent.

*Charles T. Major, County Attorney,* for County of Onondaga, respondent.

SEARL, J.  This is the return of an order to show cause directed to the Commissioner of Public Welfare of Onondaga County, the County Treasurer and County Auditor.

As there is no reported authority on the subject at hand, an expression of the court is sought for future guidance, all counsel co-operating to that end.

The conceded facts are: On or about January 24, 1939, Frank P. Nolta, his wife, Lena Nolta, and one Otto Nolta executed and delivered an instrument, in form a quitclaim deed, to Leon H. Abbott, as Commissioner of Public Welfare of the County of Onondaga, covering the farm property on which the Nolta family resided in the town of Manlius, Onondaga County. The deed was absolute on its face. It was given for the purpose of obtaining future relief in the form of old age assistance for Frank P. Nolta from the county, in accordance with the provisions of the Social Welfare Law of the State of New York.

Nolta continued to reside on the premises until shortly before his death on January 1, 1944. During this period the Welfare Department advanced to him the sum of $3,009.76. Upon the death of Nolta this property was sold by the commissioner. After deducting the amount advanced, plus burial expenses, there remains a balance of $490.24.

One Albert Lade, executor of the estate of Frank P. Nolta, demands payment of this sum from the Treasurer of Onondaga County.

The County Attorney, in resisting this application, maintains the instrument executed by the Nolta family is a deed and not a mortgage. The attorney for the Commissioner of Public Welfare, arguing that title of property already conveyed may be at stake, likewise argues that this and similar instruments are absolute conveyances.

To aid in arriving at a conclusion, one must consider both established case law and a section of the State Constitution.

The Legislature, by chapter 619 of the Laws of 1940, enacted the " Social Welfare Law ", effective March 1, 1941. It incor-

porated certain provisions of the then existing " Public Welfare Law ", which, in turn, descended from the " Poor Law ".

Section 106 of the Social Welfare Law, as amended by chapter 921 of the Laws of 1942, provides that " 1. A public welfare official * * * may accept a deed of real property and/or a mortgage thereon * * * but such property shall not be considered as public property and shall remain on the tax rolls." Subdivision 2 of the same section provides: " (a) Before the expiration of one year from the date of the conveyance of the deed or mortgage, the person giving such deed or mortgage may redeem the same by the payment of any expense incurred for the support of the person, and for repairs and taxes on such property.

" (b) After the expiration of one year from the date of the conveyance or mortgage, the public welfare official may, in his discretion, sell the property or mortgage.

" (c) Upon the death of the person or his receiving institutional care, if the mortgage has not been sold or assigned, the public welfare district may enforce collection of the mortgage debt in the manner provided by the civil practice act for the foreclosure of mortgages by action."

Article 5 of this Law relating to " Assistance and Care ", at section 223, " Assets " of the applicant for old age assistance, provides: " * * * The public welfare official may 1. in case of ownership of real property, take a deed or mortgage under the provisions of section one hundred six or a lien under the provisions of section two hundred twenty-four *provided that property covered by such deed or mortgage shall not be sold or such lien enforced by the public welfare official prior to death of the recipient of old age assistance, unless the department shall have given its approval in writing* * * *." (Italics inserted.)

In other words, section 106 permits the commissioner to sell the property " in his discretion " any time after the one-year redemption period has expired, whereas section 223 denies the commissioner the right to sell prior to the death of the grantor, " unless the department shall have given its approval in writing ".

Turning then to section 226, " Distribution of recoveries ", subdivision 1 thereof provides: " The net amount recovered from the assets of a recipient of old age assistance shall be used to pay the cost of burial and repayment to the old age assistance district for old age assistance granted."

The use of the term " assets " clearly refers to preceding section 223, which, in turn, refers to " a deed or mortgage under the provisions of section one hundred six ".

Then follows subdivision 3 of section 226: " If any balance remains it shall be paid to the estate of such recipient or to the persons entitled thereto."

An instrument, even though a deed upon its face, if given to secure a debt (Real Property Law, § 320), might well be construed to be a mortgage.

Many authorities, such as *Mooney* v. *Byrne* (163 N. Y. 86), *Barry* v. *Hamburg-Bremen Fire Ins. Co.* (110 N. Y. 1), *Ensign* v. *Ensign* (120 N. Y. 655) and *Macauley* v. *Smith et al.* (132 N. Y. 524), support generally this principle.

The age-old maxim " once a mortgage, always a mortgage " finds support as far back as 1823, wherein the Chancellor, writing in *Henry* v. *Davis* (7 Johns. Ch. 40, 43, affd. *sub nom. Clark* v. *Henry,* 2 Cow. 324) wrote: " an estate cannot be a mortgage at one time, and an absolute purchase at another."

However, the history of social welfare legislation indicates that it springs from a public impulse and a duty to furnish " relief ". If a municipality attempted to take from a recipient of welfare more than the value advanced, plus the expense of burial, such policy would manifestly be repugnant to the true purpose of " relief ".

The Constitution of the State of New York provides in section 1 of article VIII: " No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual, or private corporation or association, * * *." It is therefore urged that subdivision 3 of section 226 of the Social Welfare Law, quoted above, violates the foregoing provision of the Constitution, and is void. In its paramount position this section of the Constitution as respects legislative action would prevail were it not for language used in the next paragraph of the Constitution. The context follows: " nothing in this constitution contained shall prevent a county, city or town from making such provision for the aid, care and support of the needy as *may be authorized by law,* * * *." (Italics inserted.) First, the Social Welfare Law, under the provisions referred to above, gave the grantor the right of redemption for a period of one year (§ 106). It provides (§ 226, subds. 1, 3) that the " net amount recovered from the assets of a recipient * * * shall be used to pay the cost of burial and repayment to the old age assistance district for old age assistance granted " and the balance, if any, " paid to

the estate of such recipient or to. the persons entitled thereto.''
The clear implication is, unless the law reads in additional
obligations, that the recipient must first die before the balance
be paid. Suppose the recipient is living on his farm, that the
one-year period to redeem has just expired and the farm
property is condemned for public use, and that an amount
far in excess of sums advanced by the county is paid for the
property, unless the statute can be construed to require the
commissioner to deduct the amount of advances made and turn
the balance over to the recipient, the latter would find himself
without either a home or the profit derived from the sale of
his property. Such a dilemma would not smack of equity. He
would then no longer be the object of relief, unless the county
claimed the funds. Should the county assert such a claim the
purpose of '' Welfare '' would be defeated and the county
unjustly enriched.

Applying the wording of '' Construction and Interpretation ''
of section 94 of Statutes, Book I, of McKinney's Consolidated
Laws of New York: '' * * * the legislative intent is to be
determined primarily from the language used in the act, read
in connection with the canons of interpretation and surrounding
circumstances.'' A public welfare official is authorized by law
to '' accept a deed of real property * * * for the assistance
and care of a person at public expense.'' (Social Welfare Law,
§ 106, subd. 1.) '' Circumstances '', in event any balance
remained after sale, as well as common decency, would require
the commissioner, after deducting expense of burial and
advances made, to return to the estate of the recipient the avails
received from the sale of his property.

There is another reason why the balance could not be retained
by the county. The State of New York furnishes to the county
50% and the United States Government 25% of all advances
made. The county furnishes but 25%. It is unnecessary for
the court to pass upon this particular phase of the question.
It would appear, however, that in case of resale of the property
by the county, the recipient being either living or dead, that
the welfare commissioner would, by the provisions of the
statute [Social Welfare Law, § 226, subd. 2], be constituted a
trustee. He would act as a clearing house, so to speak, to repay
the Government, the State and the county all sums advanced
and after making authorized deductions, return the balance
to the recipient or his representatives.

Authority to treat the instrument in the instant case as a
deed and not a mortgage is found in *Macaulay* v. *Porter et al.*

(71 N. Y. 173, 179–180). There the court approves of *Baker* v. *Thrasher* (4 Denio 493): " In that case an absolute deed was accompanied by a covenant reciting that the deed had been given for the purpose of paying a debt, and agreeing that if the grantor should find a purchaser within a year, the grantee would convey to such purchaser for the amount of the debt and interest; but that if the sale should not be made within a year, the grantee would pay for the land such additional sum as might be fixed by appraisers. It was held that this agreement did not make the deed a mortgage * * *."

As written in 26 Corpus Juris Secundum, Deeds, section 81: " A special statutory provision, from which a deed derives all its validity, will be construed into and with the deed."

In our own Fourth Department, *Rowlee* v. *Durfey* (227 App. Div. 219, 220) is authority to the effect that the commissioner may take a deed and can convey good title. Our instant decision is intended to clarify the situation by the conclusion that the instrument in question is a deed and not a mortgage. However, the balance of money received from the sale, less deductions referred to, must go to the petitioner for the benefit of heirs or those entitled thereto, as provided by statute. In the above-cited case the plaintiff, overseer of the poor, had taken an assignment of a land contract " and a deed of the premises, subject to the contract ". At the time of the decision (1929) the Poor Law, a forerunner of the present Social Welfare Law, was in effect. The Poor Law, however, so far as securing the county for advancements is concerned, provided for redemption by the owner and balance in event of sale, less advances, to be returned to the recipient. In fact, the court there refers to the decision in *Church* v. *Fanning* (44 Hun 302), in which the principle of transferring property to an overseer of the poor for " the purpose of indemnity " is approved. That is the precise conclusion that must be found to exist here. Indirectly, such a finding saves many titles that otherwise might be the subject of attack. It harms no one, but it carries out the clear purpose of the act.

The county should not and does not seek to deal in real estate at the expense of the aged and indigent. Such persons should suffer no loss at a time when the law should throw a beneficent cloak about them for protection.

In the instant proceeding an order may enter directing the County of Onondaga to pay to the petitioner the sum of $490.24, plus any accumulations of interest thereon, upon execution by the petitioner of proper receipt therefor, without costs of this proceeding to any party.